IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY G. FLICK, A CITIZEN OF OHIO, | § | |
| *Plaintiff,* | § | |
| vs. | § | |
| | § | |
| THOMAS JEFFREY CAUFIELD, AN | § | CIVIL ACTION NO. 3:18-CV-1734 |
| INDIVIDUAL AND CITIZEN OF TEXAS; | § | |
| ESSENTIAL FINANCIAL EDUCATION, | § | |
| INC., A TEXAS CORPORATION; and | § | **JURY TRIAL DEMANDED** |
| THE TUITION FUNDING SOURCE, L.L.C., | § | |
| A TEXAS LIMITED LIABILITY CORPORATION, | § | |
| *Defendants.* | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

## I.    INTRODUCTION

1.    This is an action by Gary G. Flick ("Flick") against Essential Financial Education, Inc. ("Essential Financial"), and The Tuition Funding Source, LLC ("Tuition Funding"), together with their President, CEO, and Director, Thomas J. Caufield ("Caufield") for violations of Section 10(b) of the Securities Exchange Act 1934 (the "Exchange Act"), 15 U.S.C.A. § 78a *et seq.*; SEC Rule 10b-5, 17 C.F.R. § 240.10b–5; the Texas Securities Act (the "TSA"), TEX. REV. CIV. STAT. ART. 581-1; the Texas Uniform Fraudulent Transfer Act (the "TUFTA"), TEX. BUS. & COM. CODE § 24.001; common-law fraud; fraud by omission; breach of fiduciary duty; and breach of contract.

2.    From February 2016 to September 2017, Defendant Caufield, a person in control of and acting as an agent for Defendants Essential Financial and Tuition Funding (collectively, the "Corporate Entities"), defrauded investors in an unregistered securities offering (the "Offering"). Through the issuance of an unknown number of Promissory Notes, three of which with a total

value of $700,000 (the "<u>Investment</u>") were issued to Plaintiff, Defendant Caufield purported to raise capital on behalf of Tuition Funding which was in turn to be loaned to customers/students of the Online Trading Academy of Dallas, a day trading school operated by Caufield (and possibly Essential Financial) in Frisco, Texas. The Promissory Notes were to be secured against the portfolio of student loans purportedly held by the Online Trading Academy of Dallas, and which loans Caufield claimed would be assigned to Tuition Funding.

3.      Tuition Funding's Private Placement Memorandum dated February 24, 2016 (the "<u>PPM</u>"), contained material misrepresentations and omitted material facts concerning the Offering. Among other things, Caufield asserted that Tuition Funding had been doing business since 2000, when in fact the entity was only incorporated two days before the PPM was circulated among the potential investors. Further, as part of a shell game intended to mislead investors, Caufield distorted and deliberately conflated the role, interests, and standing of Caufield, Essential Financial, and Tuition Funding, including the various Defendants' ownership interests in the collateral pledged as security for the Notes. Upon information and belief, the central motivation behind this Enron-style maneuver was to support his lifestyle, shift debt from the Essential Financial balance sheet, and onto that of Tuition Funding, and thereby render both entities effectively judgment proof.

4.      Furthermore, Caufield accepted a final payment of $200,000 from Plaintiff without disclosing that he was subject to a pending lawsuit in Wisconsin (the "<u>Wisconsin Suit</u>"), a suit whose origins were firmly rooted in the Offering: In addition to the operation in Texas, Defendant Caufield also solicited investments in Wisconsin and used the same tactics to mislead investors, including the use of a further (now forfeited) shell entity, OTA Holdings, LLC, and personally using the unregistered assumed business name "Online Trading Academy of Dallas," which he had told the Tuition Funding investors was the franchise name he had transferred to Essential Financial when he assigned the sole proprietorship in 2015. Upon information and belief, Defendant Caufield used the $200,000 investment from Plaintiff to defray against the

damages payable in the Wisconsin Suit in traditional Ponzi-scheme style. When that money ran out, the Wisconsin investor filed a subsequent suit and obtained a default judgment against Caufield for $300,000.

5.     By engaging in this conduct, Defendants Caufield, Essential Financial, and Tuition Funding violated Section 10(b) of the Exchange Act (15 U.S.C. §78j(b)) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5), in addition to the Texas Securities Act and other relevant State law as pleaded below. Plaintiff seeks emergency injunctive relief pursuant to FED. R. CIV. PRO. 65 and TEX. BUS. & COM. CODE § 24.008 in the form of a Temporary Restraining Order and Preliminary Injunction. Plaintiff also seeks expedited disclosure as set out in the Motion for Expedited Discovery filed in conjunction with this Complaint.

## II.    PARTIES

6.     Plaintiff, Gary G. Flick, is an individual and citizen of the State of Ohio. Plaintiff's address is 1999 Beck Road, Galion, Ohio 44833. Plaintiff may be contacted and served through the undersigned attorneys of record.

7.     Defendant Caufield is an individual and citizen of the State of Texas. Caufield is a person in control of Defendant Tuition Funding and Defendant Essential Financial. Caufield may be served at his place of residence, 5025 Preservation Avenue, Colleyville, Texas 76034-1289, or wherever else he may be found.

8.     Defendant The Tuition Funding Source, LLC (not to be confused with the college scholarship search facility, Tuition Funding Sources https://www.tuitionfundingsources.com) is a Texas Limited Liability Company incorporated on February 22, 2016 which, on information and belief, is wholly owned and operated by Defendant Caufield. Tuition Funding has now forfeited its existence, but may be served through its registered agent, Thomas J. Caufield, at 105 Decker Ct., Ste.525, Irving, TX 75062-2340, or wherever he may be found.

9.     Defendant Essential Financial Education, Inc. is a Texas corporation which, on information

and belief, is wholly owned and operated by Defendant Caufield. Essential Financial may be served through its registered agent, Michael S. Ludlow, at 105 Decker Ct., Ste.525, Irving, TX 75062-2340, or wherever he may be found.

## III.   SUBJECT MATTER JURISDICTION

10.   The Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Exchange Act and Rule 10b 5(b) thereunder. Section 27 (a) of the Exchange Act (15 U.S.C. 78(a)), which provides that federal district courts have exclusive jurisdiction of violations of the Exchange Act and regulations thereunder, including but not limited to Rule 10b-5. 28 U.S.C. § 1337 regarding commerce regulation also provides grounds for federal jurisdiction.  Supplemental jurisdiction also exists under 28 U.S.C. § 1367 over all Texas state law claims asserted, as they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

11.   Alternatively, the Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants, who are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## IV.   VENUE & PERSONAL JURISDICTION

12.   This Court is a proper venue because both Essential Financial and Tuition Funding's registered offices are located in 105 Decker Ct., Ste.525, Irving, TX 75062-2340, which is located in Dallas County, and the Defendants regularly transacted business in Dallas County. Defendants are subject to personal jurisdiction in this Court by virtue of their citizenship in Texas.

13.   Venue is predicated on 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Also, Section 27(a) of the Exchange Act provides for venue and states in part: "[a]ny suit or action to enforce any liability

or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business…"  Venue is also proper under Section 27 of the Exchange Act "in the district wherein any act or transaction constituting the violation occurred."

14.    Further, by Clause 8(f) of the First, Second, and Third Notes (collectively the "Notes"), the Notes shall be deemed to have been made in the State of Texas and parties consent to personal jurisdiction and venue in Texas. (The clause erroneously states that any and all performance thereunder, or breach thereof shall be interpreted and construed pursuant to the laws of Nevada without regard to conflict of laws rules applied in the State of Texas. This provision is unenforceable as a matter of law, as there is no connection between Defendants, Plaintiff, or the underlying transaction to Nevada.  Accordingly, Texas law controls, to the extent not preempted by federal law.)

15.    Texas law is applicable because (1) the State of Texas has the closest and most significant relationship with the conduct upon which Plaintiffs bring their claims; (2) an out-of-state plaintiff may bring an action under Texas securities laws if complained-of conduct occurred in Texas; and (3) Texas has a strong public policy interest in enforcing its securities laws. During the relevant period, Defendants were all citizens of Texas.

## V.    FACTUAL BACKGROUND

### A.    DEFENDANT CAUFIELD AND THE ONLINE TRADING ACADEMY OF DALLAS

16.    Defendant Caufield claims to have an extensive track record as a broker including 24 years for A.G. Caufield, Inc., in addition to founding and operating DAT Capital Advisors, LLC, a Wisconsin LLC, from 2008 and 2013. According to the records of FINRA and the SEC, Defendant Caufield ceased to be a registered broker or investment adviser in 2015.

17.    Upon information and belief, in 2011 Defendant Caufield relocated from Wisconsin to

Dallas, Texas. It is believed that he did so in order to operate the Online Trading Academy of Dallas ("OTA Dallas").

18.     OTA Dallas is believed to be a franchise, the rights over which were granted by OTA Franchise Corporation (the "Franchisor"), a Nevada Corporation whose address is 241 Ridge St., Ste. 210, Reno, NV 89501. The Franchisor is not currently registered to transact business in Texas.

19.     Upon information and belief, from 2011 until 2015, Defendant Caufield operated OTA Dallas as a sole proprietorship. As stated in the PPM, and as further pleaded below, it is believed that Essential Financial has been responsible for the day-to-day operations of the franchise, and, along with Caufield, has used the assumed name the 'Online Trading Academy of Dallas' since at least 2015. However, as further pleaded and particularized below, it is not known whether Caufield has used other artifices or devices to hide his ownership interest in OTA Dallas, or whether in fact he continued to operate OTA Dallas as a sole proprietorship after 2015. Indeed, Defendant Caufield refers to OTA Dallas in correspondence as "my company" in order to mislead third parties as to the correct legal and beneficial ownership of the OTA franchise.

20.     OTA Dallas operates from its campus at Frisco Bridges, Suite 101, 2600 Dallas Parkway, Frisco, TX 75034. On its website (https://www.tradingacademy.com/dallas/) OTA Dallas purports to deliver:

> *...the very best in financial education at our state-of-the-art campus. Since 1997, Online Trading Academy has been committed to teaching the skills you need to make smarter investment decisions by using our Patented Supply and Demand Strategy. Trade with the confidence of the pros as you learn from experienced, professional traders who deliver personalized hands-on instruction.*

21.     The Franchisor further claims:

> *Our education primarily addresses a demographic of 29 million Americans who are over 40 years old and earn between $50,000 and $150,000 annually. Surveys tell us that only 28% of U.S. workers are confident in their ability to retire financially secure. Additionally, 42.8 million people are currently receiving Social Security benefits in the United States and an additional 10,000 more retire every single day.*

*Today's workers are worried about the impact that increasing health costs and this burgeoning number of Social Security recipients will have on their Social Security benefits.*

*As many people lose trust in brokers and financial institutions, they're looking for a solution that gives them confidence in their post-retirement life. We believe this will yield a vast, growing market with millions of motivated prospects for the education and services we provide.*

*Whether they're looking to grow their life savings or trying to fill a monthly income gap, our practical education helps students learn the skills they need to flourish in today's economic environment. Owning an Online Trading Academy franchise will provide you with the tools and resources to operate a Financial Education Center and change these people's lives.*

22.    As at the date of this Complaint, OTA Dallas was still offering classes to students on its website and is believed to still be transacting business at the Frisco location.

### B.    THE OFFER OF THE SECURITIES, PRIVATE PLACEMENT MEMORANDUM

23.    By the terms of the PPM, Defendant Caufield, on behalf of Essential Financial Education and Tuition Funding, sought funding for the purported expansion of OTA Dallas. Defendant Caufield claimed that he proposed to raise $1.5 million to finance loans to students of OTA Dallas, instead of selling them to a Finance Company and paying a 15% fee (Caufield's previous method of funding); Caufield also represented that he was paying the Finance Company 17.9% interest. A true copy of the PPM is annexed to this Complaint at **Exhibit "A"**.

24.    Page 1 of the PPM/Offering provides as follows:

*The Securities offered are Thirty (30) Notes issued by the Company at Fifty Thousand ($50,000) Dollars per Note, payable in cash at the time of subscription (see "Exhibit "B" for copy of Promissory Note). The minimum purchase is one (1) Note.  The Notes have an annual rate of return of seventeen point nine (17.9%) percent interest, paid monthly, with a maturity date of fifteen (15) months from the Commencement Date of each Note.  The Notes offered pursuant to this Private Placement Memorandum will be Secured by assignment to the Company of a diversified portfolio of 50 to 75 individual student loans.*

25.    Paragraph 3 of the PPM provides as follows:

*Mr. Caufield was registered with the CFTC as an Associated Person and Principal of DAT CAPITAL ADVISORS, LLC and was a Member of the NFA from 2008*

*through 2013. He was also registered with the CFTC as an Associated Person and Principal of DAT CAPITAL ADVISORS, LLC from 2008 through 2013.*

*...*

*On October 22, 2015, Mr. Caufield transferred his sole proprietorship franchise of Online Trading Academy into a newly established Corporation, Essential Financial Education Inc.  Mr. Caufield serves as President and is the majority stockholder of Essential Financial Education, Inc.*

26.    Paragraph 4 of the PPM provides as follows:

*This Private Offering Memorandum is offering a minimum of four (4) and a maximum of Thirty (30) Notes at Fifty Thousand ($50,000) Dollars per Note, for a minimum of Two Hundred Thousand ($200,000) Dollars and a maximum of One Million Five Hundred Thousand ($1,500,000) Dollars to a select group of Investors who satisfy the Investor Suitability Requirements (see "INVESTOR SUITABILITY REQUIREMENTS").  The Company has the authority to sell fractional Notes at its sole discretion.  The Company has set a minimum offering proceeds figure of $200,000 (the "minimum offering proceeds") for this Offering.*

27.    Paragraph 4.4 of the PPM provides as follows:

*The Notes are offered and closed only when a properly completed Subscription Agreement (**Exhibit A**), Note (**Exhibit B**), and Investor Questionnaire (**Exhibit C**) are submitted by the investing Subscriber or his/her Investor Representatives and are received and accepted by the Company.  The Subscription Agreement as submitted by an investing Subscriber or his/her Investor Representatives shall be binding once the Company signs the Subscription Agreement, Note and the funds delivered by the potential Investor to the Company with the Subscription Agreement has been cleared by the financial institution in which they are deposited by the Company.  The Notes will be delivered to qualified Investors upon acceptance of their subscriptions.  All funds collected from investing Subscribers will be deposited in a designated account under the control of the Company.  Investors subscribing to the Notes may not withdraw or revoke their subscriptions at any time prior to acceptance by the Company, except as provided by certain state laws, or if more than thirty (30) days have passed after receipt of the Subscription Agreement by the Company without the Company accepting the Investor's funds and delivering all applicable documents to such Investor.  The proceeds of this Offering will be used only for the purpose set forth in this Private Offering Memorandum (see **"USE OF PROCEEDS"**).*

28.    Paragraph 6.2 of the PPM provides as follows:

*The Notes being offered by the Company in this Private Placement Offering are Secured Notes.  Upon full subscription, it is anticipated the number of assigned individual student loan finance contracts (See Exhibit E), will number between 50 and 75.  The credit range distribution, and dollar amounts, will approximate the historical portfolio of loans initiated over the past 55 months to Online Trading*

*Academy of Dallas.  (See Exhibit F).  At any given point over the life of the Notes, it is anticipated that there will be approximately 110% of principal note balance assigned to the Company.*

29.    Clause 2 of the sample Promissory Note provided at Exhibit B of the PPM provides as follows:

### *2. EVENTS OF DEFAULT*

*A default shall be defined as one or more of the following events ("Event of Default") occurring and continuing:*

*(a)    The Maker shall fail to pay any interest payment on this Note when due for a period of thirty (30) days after notice of such default has been sent by the Holder to the Maker.*

*(b)    The Maker shall dissolve or terminate the existence of the Maker.*

*(c)    The Maker shall file a petition in bankruptcy, make an assignment for the benefit of its creditors, or consent to or acquiesce in the appointment of a receiver for all or substantially all of its property, or a petition for the appointment of a receiver shall be filed against the Maker and remain unstayed for at least ninety (90) days.*

*Upon the occurrence of an Event of Default, the Holder of this Note may, by written notice to the Maker, declare the unpaid principal amount and all accrued interest of the Note due immediately due and payable.*

30.    Clause 3 of the sample Promissory Note provided at Exhibit B of the PPM provides as follows:

### *3. SECURITY FOR PAYMENT OF THE NOTE(S)*

*The Note(s) offered by the MAKER will be Secured by a diversified portfolio of assigned student loans bearing interest rates of 17.9% and maturities ranging from 6 months to 3 years.*

31.    Clause 7 of the sample Promissory Note provided at Exhibit B of the PPM provides as follows:

### *7. ATTORNEYS' FEES*

*The prevailing party in an action to enforce this Note shall be entitled to reasonable attorneys' fees, costs and collection expense.*

### C.    MATERIAL MISREPRESENTATIONS AND OMISSIONS IN THE PPM

32.     Paragraph 2 of the PPM provides in pertinent part as follows:

*The Tuition Funding Source, LLC (the "Company") was formed on February 21, 2000, as a Texas Limited liability company.  At the date of this offering, One Thousand (1,000) of the Company's Membership Units were authorized, issued and outstanding.  The Company is in the business of facilitating tuition cash flow between a diversified portfolio of student loans and the Online Trading Academy of Dallas, and to manage the efficient distribution of principal and interest payments to the Note Holders of the Company.*

33.     This statement was materially false because, among other reasons, Tuition Funding was only formed and incorporated as a Texas LLC on February 22, 2016, two days before the PPM was circulated to investors. Defendant Caufield intended to mislead investors as to the business track record of the entity.

34.     Paragraph 3 of the PPM provides as follows:

*On October 22, 2015, Mr. Caufield transferred his sole proprietorship franchise of Online Trading Academy into a newly established Corporation, Essential Financial Education Inc.  Mr. Caufield serves as President and is the majority stockholder of Essential Financial Education, Inc.*

35.     In the Promissory Note dated May 6, 2016 attached as Exhibit A to the Complaint in the Wisconsin Suit, Caufield represented that the borrower under the note was "Thomas Caufield d/b/a Online Trading Academy of Dallas." Either the statement in paragraph 3 of the PPM that the sole proprietorship had been transferred to Essential Financial in 2015 was false, or, alternatively, Caufield was using the assumed name to defraud investors.

36.     Paragraph 6.2 of the PPM provides as follows:

*The Notes being offered by the Company in this Private Placement Offering are Secured Notes. Upon full subscription, it is anticipated the number of assigned individual student loan finance contracts (See Exhibit E) will number between 50 and 75.  The credit range distribution, and dollar amounts, will approximate the historical portfolio of loans initiated over the past 55 months to Online Trading Academy of Dallas.  (See Exhibit F).  At any given point over the life of the Notes, it is anticipated that there will be approximately 110% of principal note balance assigned to the Company.*

37.     This statement was false or deliberately or knowingly omitted material facts. In Exhibit F

to the PPM (see further at paragraph 42 below) Defendant Caufield sent a list of existing student loans that were allegedly included in the portfolio that was pledged as collateral for the note. However, the representations in the PPM and made in connection with the spreadsheet were false. on information and belief, none of the defendants actually had the legal right to pledge those student loans as security.

38.  Paragraph 16 of the PPM provides as follows:

> **16. LITIGATION**
>
> *The Company and its Managers have no lawsuits pending, no legal actions pending or judgments entered against the Company or Managers and, to the best knowledge of the Company, no legal actions are contemplated against the Company and/or its Managers.*

39.  This statement was subsequently rendered false by reason of the Wisconsin Suit, the existence of which was a matter Caufield was required to disclose before soliciting additional investments from Plaintiff.  Defendants knowingly withheld this information from Flick, and failed to correct their prior representations.

40.  Furthermore, Exhibit D of the PPM is a Business Plan which states at page 76:

> *From August 22, 2011 to December 31, 2015 the Online Trading Academy of Dallas has initiated $10,320,000 principal amount in individual student loans to 681 students of the Academy.  During this period of time, The Online Trading Academy of Dallas has paid a finance company $1,253,115.19 in finance fees based on the total amount of student loan volume written. In addition, $936,299.89 in factoring fees to other finance companies has been paid.  Both categories of these fees can be significantly reduced, or eliminated altogether, if The Tuition Funding Source, LLC takes on the management of student loan assignment and payment.*

41.  This statement was false or deliberately or knowingly omitted material facts because the Online Trading Academy of Dallas was not a registered assumed name. In the circumstances, when Caufield stated that the Online Trading Academy of Dallas was paying factoring fees, he was in fact referring to himself or Essential Financial, both relevant facts that he failed to state. In light of these matters, the statement that loans to Tuition Funding were required to reduce or eliminate the finance fees was false or misleading. Both Caufield and/or Essential Financial

could have offered the Offering to investors, but Caufield chose instead to use a shell entity. Finally, if the right to receive tuition payments had been assigned to a finance company, the statements related to Caufield or Tuition Funding's right to pledge the collateral were also false.

42.    Furthermore, Exhibit F to the PPM was a spreadsheet entitled in the 'RAW STUDENT LOAN DATA, August 22, 2011 – January 31, 2016, Online Trading Academy of Dallas.' (the "Spreadsheet"). A true copy of the Spreadsheet is annexed to this Complaint at **Exhibit "B"**. The Spreadsheet was supplied to Plaintiff by Skoufis by email on February 24, 2016 electronically as a separate Microsoft Excel document annexed to the PPM and was named "Entire Financing Portfolio OTA Dallas". This statement/description was false because any loans to students from 2011-2015 had been granted by Caufield personally (when he ran OTA Dallas as a sole proprietorship) and, it is believed, Essential Financial thereafter. Caufield misrepresented the ownership of the loans/notes in order to give a favorable history of business operations, and also to mislead investors as to the value of the collateral offered as security for the Offering. Further, 'Online Trading Academy of Dallas' was not a registered assumed name but was utilized as a device by Caufield to mislead investors.

43.    Further, Tuition Funding was formed two days before the PPM was circulated to investors. The portfolio of loans stated in spreadsheet, if truthful, had not been assigned to Tuition Funding at the date the PPM circulated. When Caufield was offering investors security in the portfolio of loans, he was, in fact offering security over loans that were held by himself personally or Essential Financial, and not Tuition Funding, and that on information and belief, were never assigned to Tuition Funding.

44.    Finally, unless funds were advanced to students by Tuition Funding, rather than Tuition Funding offering students a Line of Credit (see Column 'I' in the Spreadsheet titled 'LOC'), all references in the PPM to 'loans' are false.

45.    As further plead and particularized below, the misrepresentations and omissions pertaining to (a) the history of the Defendants' business operations, (b) the standing and interest of the

Corporate Entities, (c) security of the investment, and (d) ownership of the collateral, were all false. The misrepresentations and omissions pleaded above were material in that a reasonable investor would consider these factors important when deciding whether to purchase the securities and invest in Tuition Funding. Furthermore, Defendant Caufield, as the President of both of the Corporate Entities and the owner of OTA Dallas, knew the statements were false and intended that Plaintiff would rely upon them; alternatively, Caufield made the material statements recklessly not caring whether they were true or false.

### D. DISCUSSIONS BETWEEN PLAINTIFF AND DEFENDANT CAUFIELD

46.   On or before February 23, 2016, Defendant Caufield, whether individually or as an agent of or an officer in control of Defendant Tuition Funding and/or Defendant Essential Financial recruited Peter Skoufis ("Skoufis"), to be a promoter for Tuition Funding and to connect Caufield with potential investors, including Plaintiff.

47.   On or around February 24, 2016, Defendant Caufield sent Skoufis the PPM by email with the intent that Skoufis would recruit further investors, including Plaintiff.

48.   On or around February 24, 2016, Skoufis, at the direction of Defendant Caulfield sent Plaintiff the PPM by wires and electronic post a copy of the PPM.

### E. FURTHER MATERIAL MISREPRESENTATIONS BY CAUFIELD TO PLAINTIFF

49.   On or before March 29, 2016, Plaintiff discussed the Offering on the telephone with Defendant Caufield. Defendant Caufield reiterated his track record as a trader, and also repeated several core misrepresentations in the PPM, including, and the ownership and security of the collateral offered as security for the Notes.

50.   As a further inducement, Defendant Caufield told Plaintiff during their conversation that Caufield would assign Tuition Funding's Accounts Receivable to investors as further security for the investment. In the event of default, Caufield told Plaintiff that investors would be able to seek payment direct from students.

51.   This statement was false because, for the reasons pleaded above, the accounts stated in Exhibit F to the PPM were held by Caufield personally, or Essential Financial, and therefore could not be assigned by Tuition Funding. Furthermore, Caufield had no intention of assigning the Accounts Receivable of either of the Corporate Entities to investors. Finally, the Accounts Receivable covering both the existing loans in the Spreadsheet and any new loans created by Tuition Funding were never assigned to investors, whether by Caufield, or the Corporate Entities.

### F.   ADVANCES BY PLAINTIFF FLICK UNDER THE FIRST NOTE

52.   After considering the investment in the PPM, together with the false representations made by both Defendant Caufield, individually and on behalf of the Corporate Entities, and Peter Skoufis, Plaintiff was induced to invest in the Offering. On or around April 1, 2016, Plaintiff, in reliance upon the statements pleaded above, signed a Promissory Note which had been included with the PPM and which stated Tuition Funding as the Maker in the sum of $200,000 (the "First Note"). The payment was wired by Plaintiff and received by the Defendants on or around April 6, 2016. The First Note was in the same form and contained the same terms as the sample Promissory Note provided at Exhibit B of the PPM.

53.   Notwithstanding the fact that the PPM put forward by Caufield and Tuition Funding imposed strict requirements upon both sides, Caufield and Tuition Funding readily accepted the payment under the First Note without insisting that any of these formalities be complied with. Indeed,  Plaintiff Flick was never required to execute a Subscription Agreement contained in the accompanying Subscription Booklet, or an Investor Questionnaire. Plaintiff was not represented by an accredited broker, and received no advice regarding the risks of the Investment.

### G.   INITIAL REPAYMENTS BY TUITION FUNDING

54.   Caufield and Tuition Funding initially made timely installment repayments under the First Note.

### H.   ADVANCES UNDER THE SECOND NOTE

55.   On or around May 23, 2016, during a telephone conversation, Plaintiff and Defendant Caufield discussed Plaintiff investing further sums with Defendants. As a result of the conversation, Plaintiff, still in reliance upon the statements pleaded above, and the timely payments towards the first Note, was induced by Caufield to loan a further $300,000 to Tuition Funding. Caufield followed up the conversation on May 23, 2018 by sending Plaintiff a draft Promissory Note. Plaintiff replied by email on May 23, 2018 confirming that he was closing accounts in order to fund the further payment.

56.   On or around June 16, 2016 wired $300,000 to Tuition Funding. The payment was received by the Defendants on or around June 22, 2016.

57.   On June 22, 2016, Defendant Caufield signed a second Promissory Note in the sum of $300,000 (the "Second Note"). The Second Note was in the same form and contained the same terms as the sample Promissory Note provided at Exhibit B of the PPM. A true copy of the Second Note is annexed to this Complaint at **Exhibit "C"**.

### I.   THE WISCONSIN SUIT

58.   On June 13, 2017, Calvin Martinez filed suit against Defendant Caufield and OTA Holdings, LLC d/b/a Online Trading Academy of Dallas in the Circuit Court of Washington County, Wisconsin under Case No. 2017-CV-000301. Martinez sought damages for *inter alia* fraud, fraudulent inducement, and negligent misrepresentation in connection with a payment to Caufield under a Promissory Note issued in May 2016 in the sum of $750,000 loaned to OTA Dallas.  A true copy of the Martinez Promissory Note is annexed to this Complaint at **Exhibit "D"**.

59.   On January 8, 2017, the case was removed from state court to the U.S. District Court for the Eastern district of Wisconsin under case no. 2:17-cv-00999-LA. On December 4, 2017 the case in the U.S. District Court was voluntarily dismissed with prejudice.

60.   On February 16, 2018, Calvin Martinez filed a further suit in the Circuit Court of Washington County, Wisconsin under case no. 2018-CV-000104. By an order by the Circuit Court of Washington County, Wisconsin dated April 4, 2018, Default Judgment was entered against Caufield in the sum $312,727.55.

61.   The PPM contained affirmative statements that neither Caufield nor Tuition Funding were parties in any pending lawsuits. Defendant Caufield failed to inform Plaintiff that he was subject to a lawsuit connected with the Offering or OTA Dallas.

62.   The failure to notify Plaintiff of the Wisconsin Suit before Plaintiff signed the Third Note, caused a loss to Plaintiff, and rendered the previous affirmative statements at paragraph 16 of the PPM erroneous and wholly misleading.

### J.   ADVANCES UNDER THE THIRD NOTE

63.   On June 15, 2017 the full sum outstanding under the First Note was repaid.

64.   On June 19, 2017, Defendant Caufield sent an email to Plaintiff in the following terms:

> *'Attached is your June statement.  As we approach the 6 month mark for the year, revenue is on pace for 6 million, and EBITDA is on pace for about 800k.  Our best year ever.*
>
> *I continue to look to expand.  If your friend wants a part of It,  I'd be happy to host you both for a visit.'*

65.   The email was sent with the signature 'Tom Caufield, Owner/President. Online Trading Academy'. As pleaded above, Online Trading Academy is an assumed name used by Caufield to mislead investors.

66.   On July 18, 2017, Defendant Caufield sent an email to Plaintiff in the following terms:

> *'Attached is our 6 month P&L and your statement for July.  Business is strong (up 40% year over year), and will continue to grow as we move forward.  Thank you for your continued support'*

67.   This email is also sent with the signature "Tom Caufield, Owner/President. Online Trading Academy". As pleaded above, Online Trading Academy is believed to be the assumed name of

Essential Financial. Defendant Caufield made this statement the day before the attorneys he had hired to defend the Wisconsin Suit filed their Notice of Removal.

68.     On or around August 8, 2017, Plaintiff discussed a further investment in the scheme with Defendant Caufield and, in further reliance of the statements in the PPM, together with the correspondence pleaded above, wired a further $200,000 to Defendant Tuition Funding. At no time prior to the payment did Caufield amend, vary, or correct any of the assumptions or statements in the PPM, nor did he mention that the Wisconsin Suit had been filed.

69.     On September 30, 2017, Defendant Caufield sent further Promissory Note (the "Third Note") to Plaintiff. Again, Tuition Funding was the maker of the Third Note. The Third Note was in the same form and contained the same terms as the sample Promissory Note provided at Exhibit B of the PPM. A true copy of the Third Note is annexed to this Complaint at **Exhibit "E"**.

### K.     DEFAULT UNDER THE SECOND AND THIRD NOTES

70.     Defendants made initial repayments towards the sum of $500,000 owed under the Second and Third Notes.

71.     As further particularized below, Defendants have failed to make any further payments after February 5, 2018. The last payment made by any of the Defendants to Plaintiff was an interest payment in the sum of $7,458.33 made on February 5, 2018. At the date of this Complaint the balance owed to Plaintiff is $426,675.11 with further interest and attorneys fees to be calculated.

72.     Further, Defendants and their attorneys have ignored correspondence from Plaintiff's attorneys.

### L.     SALE, TRANSFER OR ASSIGNMENT OF OTA DALLAS

73.     On a precise date which is unknown to Plaintiff, but which Plaintiff believes was on or around June 25, 2018, Defendant Caufield sold, transferred, or assigned his ownership interest in the OTA Dallas franchise to Ahsan Raza, or an entity owned or controlled by him.

74.    Plaintiff had previously notified Defendants of their claims, and any transfer of the OTA Dallas franchise was made with the full knowledge of pending legal claims against both Caufield and the Corporate Entities.   Any such transfer was also made with the actual intent to hinder, delay, or defraud Caufield's creditors, and the creditors of the Corporate Entities which he controlled and directed, in order to perpetrate the acts of fraud pleaded in this Complaint.

## VI.    FEDERAL SECURITIES CLAIMS

### Count I — FEDERAL VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND SEC RULE 10b-5
### (Against All Defendants)

75.    Plaintiff repeats and incorporates paragraphs 1 through 74 of this Complaint by reference.

76.    The Notes are securities within the meaning of the Exchange Act.

77.    As more fully described  above, Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase and sale of said securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails and wires have: (a) used and employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) knowingly engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities, to wit, Plaintiff in this action.

78.    Defendants thereby knowingly or recklessly violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Specifically, the following material statements and omissions all of which were made knowingly or recklessly by Defendants violated the Exchange Act:

(a)    Defendants falsely claimed in the PPM that Tuition Funding had been trading since February 21, 2000 when in fact it is only be incorporated two days previously.

(b)   Defendants falsely claimed in the PPM that Tuition Funding had an ownership interest in the portfolio of the loans offered as collateral, when such interest would not vest in Tuition Funding until assignments were executed to transfer ownership to Tuition Funding.

(c)   Defendants misled investors as to their standing in the Offering by using the assumed name 'Online Trading Academy of Dallas' in order to obscure or conceal each Defendant's involvement in the operation of OTA Dallas, standing, and rights (or lack of them) to the collateral pledged as security for the Notes.

(d)   Defendants failed or deliberately omitted to make clear that (i) the portfolio of loans provided as Exhibit F to the PPM vested in Caufield and Essential Financial at the time of the Offering and not OTA Dallas (an unregistered assumed name) or Tuition Funding (the party purportedly offering the loans as security), and (ii) that if the loans had been funded through a factoring arrangement, the accounts receivable would already have been assigned or pledged to the lender. Accordingly, there is no valuable security in the portfolio.

(e)   Defendants falsely claimed in the PPM that they enjoyed the standing to assign the portfolio of student loans and that said loans were valuable security.

(f)   Defendants falsely claimed that they would assign 110% of the current loan balances to Tuition Funding at all times when in fact they lacked the standing to do so.

(g)   Defendants told Plaintiff that OTA Dallas' Accounts Receivable consisting of existing and future loans would be assigned to investors to ensure payment under the Notes, even though they had no intention of granting the assignments and in fact did not grant the assignments.

(h)   Defendants falsely claimed that the Investment would be applied only to loans to students of OTA Dallas.

(i)     Defendants falsely claimed in the PPM that Tuition Funding was facilitating tuition cash flow between student loans and OTA Dallas when in fact (i) Tuition Funding had no business or operational history, and (ii) OTA Dallas is an assumed name used by all Defendants. Defendants thereby misrepresented the fact that Defendant Caufield was borrowing money with one hand to loan to himself on the other.

(j)     Defendants misled investors by falsely holding out Online Trading Academy as a separate legal entity. By his conduct, Defendant Caufield was playing a shell game with Essential Financial, OTA Dallas, and Tuition Funding in order to induce investors to invest in the Offering, and also to hide funds and siphon off capital between the Corporate Entities and into Defendant Caufield's own accounts, or to repay earlier investors.

(k)     Defendants failed to disclose the existence of Wisconsin Suit and correct an earlier affirmative statement regarding the lack of any claims or suits before Plaintiff chose to invest under the Third Note.

79.    Plaintiff was unsophisticated in terms of financial and securities matters, a fact the Defendants recognized and capitalized upon.

80.    Defendant Caufield, both individually, and as a person in control of and as an agent of Essential Financial and Tuition Funding, acted with scienter and engaged in the referenced acts intentionally, knowingly, and/or with severe recklessness. As part of the scheme, Caufield provided blank Promissory Notes in the PPM which he intended investors, including Plaintiff, would sign.

81.    Plaintiff reasonably and justifiably relied upon the material misrepresentations and omissions pleaded above, and suffered foreseeable and substantial losses as a result.

82.    At all material times, Defendant Caufield, directed and controlled both Essential Financial and Tuition Funding's securities offerings, conduct, management and policies, including

financial management. Caufield is therefore liable as a control person under Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)) for Essential Financial and Tuition Funding's violations under the Exchange Act and Rule 10b-5 thereunder.

## VII.  TEXAS STATE LAW CLAIMS

### COUNT II — VIOLATION OF THE TEXAS SECURITIES ACT
### (AGAINST ALL DEFENDANTS)

83.   Plaintiff repeats and incorporates paragraphs 1 through 82 of this Complaint by reference.

84.   The Notes are securities within the meaning of the Texas Securities Act, TEX. REV. CIV. STAT. ART. 581-1.

85.   Defendants are offerors and sellers of securities within the definition of the Texas Securities Act. All have offered or sold Notes to the Plaintiff or are jointly and severally liable under legislation pleaded hereunder.

86.   As set forth above, Defendants offered and sold the foregoing securities by means of untrue statements of material facts, and omissions of material facts necessary in order to make their positive statements not misleading in the light of the circumstances under which they were made, all in violation of the Texas Securities Act, Art. 581-33(A)(2). In addition, Caufield and Tuition Funding issued the Notes complained of and are liable under Art. 581-33(A)(2) of the Texas Securities Act for the material misrepresentations and omissions in the PPM.

87.   By reason of the matters pleaded in paragraph 78 above, Defendants violated Texas Securities Act, Art. 581-33(A)(2), which provides, "A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission . . ."

88.     Pursuant to Art. 581-33(A) and (D), Plaintiffs are entitled to their actual damages for investments that do not conform to the representations and are therefore unsuitable, plus opportunity costs, plus interest thereon at the legal rate from the date of each contribution. Plaintiffs are also entitled to recover costs and reasonable attorneys' fees under Art. 581-33(D)(6) and (7).

89.     Further or alternatively, Caufield directly or indirectly controls both Essential Financial and Tuition Funding, and is a control person thereof. Pursuant to the Texas Securities Act, Art. 581-33(F), he is, therefore, liable jointly and severally with each other and with the makers of the Notes, under Art. 581-33(F) of the Texas Securities Act to the same extent as if each were the seller or issuer. As a result of Defendants' violations of the TSA, Caufield is liable to the persons or entities who purchased units in the offering for returning to them the money they paid for securities and rescission of the sale of the securities.

90.     Each Defendant has knowingly and intentionally engaged in wrong-doing in providing the services complained of in connection with each offer and sale of the Notes to Plaintiff. Plaintiff is therefore entitled to punitive damages for Defendants' violations of the TSA as further pleaded hereunder.

### COUNT III — COMMON LAW FRAUD
#### (AGAINST ALL DEFENDANTS)

91.     Plaintiff repeats and incorporates paragraphs 1 through 90 of this Complaint by reference.

92.     Plaintiff repeats the misrepresentations and omissions pleaded at paragraph 78 above.

93.     By virtue of the acts and omissions of the Defendant Caufield on behalf of the Corporate Entities pleaded in paragraph 78 above, the Defendants have committed fraud against Plaintiff.

94.     Defendants made the material misrepresentations and statements to Plaintiffs referenced above in paragraphs 16-74, and 78 which were false when made, and the Defendants made such misrepresentations with knowledge of their falsity or recklessly without any knowledge of or regard for the truth and as a positive assertion.

95.   Said misrepresentations and statements constituted a promise of future performance made with intent not to perform as promised and/or a statement of opinion based upon a false statement of fact or an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion.

96.   By virtue of those acts and omissions of the Defendant Caufield on behalf of all Defendants referenced in paragraph 78 above, Defendants concealed and failed to disclose material facts within their knowledge, and did so in the knowledge that Plaintiff was ignorant of such facts and was relying thereon and did not have an equal opportunity to discover the truth. In the circumstances, Defendants had a duty to speak by reason of the fiduciary relationship pleaded hereunder but deliberately remained silent; thus, their silence is equivalent to false representations. Moreover, if the Defendants disclosed any such facts, they had the duty to disclose the whole truth, which duty the Defendants breached. Defendants also made partial disclosure which fixed them with a duty to disclose the whole truth, which duty the Defendants breached. Finally, Defendants were under a duty by virtue of discovering new information that rendered the statement in paragraph 16 of the PPM misleading or untrue, to correct the statement in paragraph 16 of the PPM, which duty Defendants breached.

97.   Defendant Caufield, both individually and on behalf of the Corporate Entities, made these material misrepresentations, omissions, and concealments for the purpose and with the intent to induce Plaintiff to act and/or refrain from acting and to ensure that he should remain ignorant of the herein-described wrongful acts and omissions. By way of example of scienter, Defendant Caufield intended that Plaintiff would rely on his misrepresentations and execute Promissory Notes in Tuition Funding's favor.

98.   Plaintiff reasonably and justifiably relied upon these material misrepresentations, concealments, and omissions and thereby suffered injury and damage. Defendants' fraud has directly and proximately caused and resulted in damages to Plaintiff, for which he hereby sues the Defendants. Plaintiffs hereby sue the Defendants for all of those remedies set forth below.

99.   All of the misrepresentations were made with the intent that they be acted upon by Plaintiff and Plaintiff did act in reliance upon the misrepresentations. By reason of Defendant Caufield's fraudulent inducement to contract, and in reasonable and justifiable reliance, Plaintiff executed the Notes and has suffered substantial damages which were proximately caused by the misrepresentations pleaded above.

100.   Plaintiff is entitled to an award of actual damages suffered by him. Plaintiff is also entitled to exemplary damages and attorneys' fees based on Caufield's fraud and malice.

### COUNT IV — BREACH OF FIDUCIARY DUTY
#### (AGAINST DEFENDANT CAUFIELD)

101.   Plaintiff repeats and incorporates paragraphs 1 through 100 of this Complaint by reference.

102.   Defendant Caufield was the promoter of a corporation, Tuition Funding, and as such owed fiduciary duties to Plaintiff. Furthermore, an informal fiduciary relationship existed between Defendant Caufield and Plaintiff which arose out of the trust and special confidence Plaintiff reposed in Defendant Caufield as part of their previous dealings. These fiduciary duties included the duties of loyalty, due care, and utmost good faith to Plaintiff.

103.   As further pleaded and particularized above, Defendant Caufield breached the fiduciary duties owed to Plaintiff by engaging in fraudulent conduct, self-dealing, and generally acting in a fraudulent and grossly negligent manner.

104.   Defendant Caufield's breach of his fiduciary duties caused Plaintiff loss and damage. Plaintiffs are entitled to recover damages suffered by him as a result of Caufield's breach of fiduciary duty.

105.   Further, Plaintiffs are also entitled to exemplary damages and attorneys' fees based on Defendant Caufield's knowing and malicious conduct, in addition to actual damages.

### COUNT V — VIOLATION OF THE TEXAS UNIFORM FRAUDULENT TRANSFER ACT
#### (AGAINST ALL DEFENDANTS)

106.   Plaintiff repeats and incorporates paragraphs 1 through 105 of this Complaint by reference.

107.  As more fully pleaded above, Defendant Caufield and the Corporate Entities:

(a)    offered Plaintiff (and other investors across at least three states) an investment opportunity promising an artificially high rate of return;

(b)    utilized material false statements and omitted material facts in order to induce reliance by investors;

(c)    made a pledge of collateral as security that Defendants did not own or have the standing to make;

(d)    made further inflated claims that default under the Notes was virtually impossible;

(e)    made initial repayments which reinforced trust in the integrity and security of the scheme;

(f)    failed to declare that they had been sued by a previous investor for fraud connected to the same offering of securities;

(g)    successfully compromised said lawsuit on confidential terms;

(h)    were subsequently sued again by the same investor, but did not answer the claim and were made subject to a default judgment for $300,000;

(i)    subsequently defaulted on payments to Plaintiff; and

(j)    have failed to provide any explanation whatsoever as to how default had occurred.

108.  On June 22, 2018, Plaintiff's attorneys notified Caufield's attorneys by email that Plaintiff intended to file suit against Caufield and the Corporate Entities. It is now believed that on or around June 25, 2018, Defendant Caufield, in the teeth of this warning, sold, assigned, or otherwise transferred the franchise of OTA Dallas to Ahsan Raza. In view of the facts above, such a transfer was made by the Defendants actual intent to hinder, delay, or defraud his creditors, and the creditors of the Corporate Entities which he controlled and directed in order to perpetrate the acts of fraud pleaded in this Complaint and in violation of TEX. BUS. & COM. CODE 24.005(a)(1).

109.  As a result, the Plaintiff is entitled to avoid the transfer. Moreover, the Plaintiff is entitled

by TEX. BUS. & COM. CODE 24.008 to a Temporary Restraining Order and Preliminary Injunction to prevent further disposition of assets.

110.   Upon information and belief, the property and monies transferred by Plaintiff have been transferred from Tuition Funding to Defendant Caufield and Essential Financial. In the event the Defendants have used any of Plaintiff's funds advanced under the Notes for purposes other than providing loans to students of OTA Dallas, the use of the funds would constitute fraudulent transfers. These transfers and obligations are all fraudulent as to Plaintiff because Defendants made said transfers and obligations after or within a reasonable time before Plaintiff's claims as more fully particularized above arose. These transfers and obligations are also fraudulent because Defendants made the transfers and obligations with actual intent to hinder, delay or defraud Plaintiff.

111.   By reason of the matters aforesaid, Defendants violated the TUFTA, TEX. BUS. & COM. CODE 24.001, *et seq.*

### COUNT VI — UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST
### (AGAINST ALL DEFENDANTS)

112.   Plaintiff repeats and incorporates paragraphs 1 through 111 of this Complaint by reference.

113.   As pleaded above, Defendants, in breach of their fiduciary duties, and as a result of the actual and constructive fraud perpetrated by the Defendants, induced Plaintiff to transfer to them the sum of $700,000. Plaintiff was injured by this fraud and the breaches of fiduciary duty. By reason of these Defendants' breaches of fiduciary duties, they are not entitled to retain any such remuneration.

114.   Accordingly, these Defendants have been unjustly enriched because they have retained the proceeds from the Investment. The only remedy that will prevent these Defendants' unjust enrichment at Plaintiff's expense is to impose a constructive trust upon such assets, accounts, or other compensation of the Defendants, as well as all other sums and profits that Caufield received from the entities with which Plaintiff directly or indirectly engaged in transactions.

115.  Plaintiffs have been damaged by Defendants' conduct. Therefore, Plaintiffs are entitled to equitable relief. Defendants hold money which in equity and good conscience belongs to Plaintiff, and Defendants have been unjustly enriched to the extent the funds they received from Plaintiff as a part of the fraudulent investment scheme outlined in the preceding paragraphs. Therefore, Plaintiff is entitled to a judgment in equity that Defendants be required to disgorge and pay those sums back to Plaintiffs.

## COUNT VII — BREACH OF CONTRACT
### (AGAINST DEFENDANT TUITION FUNDING)

116.  Plaintiff repeats and incorporates paragraphs 1 through 115 of this Complaint by reference.

117.  Entirely without prejudice to the matters pleaded above, Plaintiff would further show that the actions and/or omissions of Defendants described hereinabove constitute breach of contract.

118.  Defendant Caufield on behalf of Tuition Funding executed a valid and enforceable Note and Security Instrument which has been perfected. Plaintiff is the holder of the Note and Security Instrument, the Notes are in default, and Defendants have failed to honor their agreement to pay Plaintiff all amounts due and owing under the Notes.

119.  Plaintiff served a Demand Notice on Defendant on April 12, 2018. No response to the Notice or further payments have been received. The Notes have therefore been validly accelerated.

120.  Defendant Tuition Funding has breached the terms of the Notes by:

    (a)    Failing make payments lawfully due under the Notes, whether within 30 days of demand or at all;

    (b)    applied funds under the Notes for purposes other than those stipulated in the PPM;

    (c)    dissolving or terminating the existence of Tuition Funding.

121.  As a direct and proximate result of Defendants' breach of the Notes, Plaintiff has incurred and will continue to incur losses, costs, and expenses, including attorney's fees and costs

associated with the prosecution of this action, and for which Plaintiff hereby sues.

122.  Plaintiff is entitled to recover the unpaid portion of the note, interest, its reasonable and necessary attorney's fees and other expenses from Defendant because this is a suit based on the breach of a contract.

## VIII.   CONTROL, AGENCY, JOINT AND SEVERAL LIABILITY, ALTER EGO, RESPONDEAT SUPERIOR

123.  Plaintiff repeats and incorporates paragraphs 1 through 122 of this Complaint by reference.

124.  As pleaded above, at all material times, Defendant Caufield was control person of both Essential Financial and Tuition Funding within the meaning of Section 20(a) of the Exchange Act and TEX. CIV. PRAC. & REM. CODE ART. 581-33F. Furthermore, Defendant Caufield was an agent of both Defendant Essential Financial and Tuition Funding when he violated the securities legislation and engaged in the fraudulent conduct pleaded above. Defendant Caufield's knowing and deliberate fraudulent conduct was committed both for his own benefit, and for the benefit of Defendants Essential Financial and Tuition Funding. In these circumstances, Plaintiff may hold the Defendants jointly and severally liable for the damages.

125.  Moreover, pursuant to Texas Tax Code Section 171.255(a), each director and officer of the corporation, the charter of which has been forfeited, "is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived."

126.  Defendant Caufield is personally liable for the misrepresentations and omissions made above. Further, the Corporate Entities are liable for the tortious and negligent acts of their agents and employees, including without limitation, Defendant Caufield. As further pleaded and particularized above, Caufield was acting within the course and scope of his agency and employment with Essential Financial, and in furtherance of Essential Financial's business, when he engaged in the wrongful conduct pleaded above.

127.  Finally, Essential Financial and Tuition Funding as corporate entities are legal fictions that have been organized and operated as mere tools or business conduits of each other and of their principal, Caufield. They are therefore alter egos of each other and of Caufield.

128.  The relationship between and among Caufield and the Corporate Entities is such that the separateness of each corporation has ceased, their funds have been commingled with each other and with the funds of Caufield, and holding only the individual corporations liable would result in injustice.

129.  Caufield used the Corporate Entities as an alter ego and caused them to be used for the purposes of perpetrating a fraud on his creditors and the creditors of the Corporate Entities.

130. As set forth above, the Corporate Entities have been used as a means of perpetrating several theories of fraud and fraudulent transfers. Therefore, any liability imputed to any of Caufield or the Corporate Entities should be imputed to all.

## IX.   APPLICATION FOR TEMPORARY RESTRAINING ORDER PRELIMINARY INJUNCTION

131.  Plaintiff repeats and incorporates paragraphs 1 through 130 of this Complaint by reference.

132.  Plaintiff seeks injunctive relief under FED. R. CIV. P 65 and TEX. BUS. & COM. CODE § 24.008. Specifically, Plaintiff seeks a Temporary Restraining Order and Preliminary Injunction to enjoin Caufield and the Corporate Entities from transferring, secreting, or otherwise removing such assets and funds from their accounts until such time as a final decision on the merits of Plaintiff's equitable claims can be made.

133.  To obtain a Temporary Restraining Order under FED. R. CIV. P. 65, a party must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not have an adverse effect on the public interest.

134.  The court may grant an injunction to prevent dissipation of assets by freezing assets and accounts if the injunction is granted in support of equitable remedies. Plaintiff in this action seeks *inter alia* disgorgement, accounting, injunctions, restitution, rescission, and a constructive trust, all of which allow the Court to issue an injunction to impose an asset freeze upon Caufield and his accounts, and the Corporate Entities. The requested injunctive relief is particularly appropriate in light of the clear attempt to dissipate assets, namely the transfer or sale of the OTA Dallas franchise.

135.  Injunctive relief is also appropriate pursuant to the TUFTA, see TEX. BUS. & COM. CODE § 24.008(a)(3)(A), and pursuant to general equitable principles.

136.  If not enjoined and restrained, Caufield's actions will cause Plaintiff to suffer irreparable harm. There is evidence that neither Caufield nor the Corporate Entities will be in a position to satisfy a judgment, and it Caufield is permitted to continue to wrongly dispose of or dissipate assets Plaintiff will be unable to achieve the equitable remedies he seeks.

137.  Further, there is a substantial likelihood Plaintiff will succeed on the merits, a greater injury will result from denying injunctive relief than from its being granted, and entering temporary injunctive relief will not disserve the public interest.

138.  In these circumstances, Plaintiff seeks a temporary restraining order, preliminary injunction, and permanent injunction for the reasons and in the terms set out more fully in its Motion for a Temporary Restraining Order and Preliminary Injunction (to follow).

## X.   ACTUAL DAMAGES

139.  As a result of Defendants' wrongful conduct pleaded above, Plaintiff has suffered a loss of $500,000 that was proximately caused by the wrongful conduct of the Defendants as pleaded herein.  Defendants' conduct has caused Plaintiff substantial harm and he is entitled to actual damages and/or equitable relief. Plaintiff is also entitled to special damages. Defendants are jointly and severally liable for the injury caused by Caufield in control of or on behalf of

Defendants Essential Financial and Tuition Funding pursuant to Texas law, and the Texas Securities Act.

140.  By reason of the matters aforesaid, Plaintiff is entitled to special damages over and above actual damages.

141.  Further, Plaintiff is entitled to pre-judgment and post-judgment interest on his damages.

## XI.  <u>EXEMPLARY DAMAGES</u>

142.  Plaintiff incorporates all of the preceding paragraphs as if fully set forth herein.

143.  In addition to his actual and special damages, Plaintiff is entitled to recover exemplary or punitive damages. Defendant Caufield's conduct was done fraudulently, knowingly, with actual awareness, malice and intent, and/or with such an entire want of care as to indicate that the acts and omissions in question were the result of conscious indifference to the rights and welfare of Plaintiff.

144.  Furthermore, at all material times, Caufield acted on behalf and for the benefit of Essential Financial and Tuition Funding intending that he would obtain the benefits through the fraud.

145.  The wrongs done by the Defendants were fraudulent and malicious and were done with reckless disregard and outrageous indifference to the welfare of Plaintiff and warrant the imposition of exemplary damages.

## XII.  <u>ATTORNEY'S FEES</u>

146.  Further, as part of their actual damages, TEX. REV. CIV. STAT. ART. 581-33D and TEX. BUS. & COM. CODE § 24.013 entitle Plaintiff to recover reasonable and necessary attorneys' fees, expert witness fees, cost for copies of depositions, and court costs.

147.  Plaintiff is also entitled to his reasonable and necessary attorneys' fees, expert witness fees, cost for copies of depositions, and court costs by the terms of the Notes, and under Chapter 38 of the TEX. CIV. PRAC. & REM. CODE.

## XIII. DISCOVERY RULE, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND ADVERSE DOMINATION

148.  The causes of action set out in this Plaintiff's Original Petition are not barred by the statute of limitations because the discovery rule applies. By reason of the conduct pleaded above, Plaintiff's injuries were inherently undiscoverable and were not discoverable through the exercise of reasonable care and diligence. Indeed, Caufield's special skill and knowledge of the Offering, as well as his manipulation of information, and deliberate acts of concealment made it impossible for lay people such as the Plaintiff to discover their injuries as they occurred. Even though Plaintiff exercised reasonable diligence, Plaintiff was not aware, nor should he have been aware, that there was some concrete and specific risk of harm to his legally protected interest.

149.  Further, the statute of limitations for Plaintiff's claims should be tolled because Plaintiff's injuries were fraudulently concealed. Defendant Caufield, with knowledge of his wrongful conduct, made fraudulent misrepresentations and under a duty to disclose certain facts, concealed such facts from Plaintiff, preventing Plaintiff from discovering his injuries and causes of action against Caufield and the Corporate Entities. Plaintiff reasonably relied on the representations of Defendant Caufield, a person in whom he reposed trust and confidence, and as a result of such reliance delayed in taking legal action against Defendant Caufield and Corporate Entities. Defendant Caufield's fraud and other wrongful acts pleaded above were concealed and not known to the injured parties.

150.  The statute of limitations is also tolled by the doctrine of adverse domination.

## XIV.  CONDITIONS PRECEDENT

151.  All conditions precedent to each and every cause of action set forth above have occurred, been met, been waived, or otherwise been satisfied.

## XV.  DEMAND FOR JURY TRIAL

152.  Plaintiff demands trial by jury.

## XVI.   PRAYER

**WHEREFORE,** Plaintiff prays that Defendants be cited to appear and answer herein and that he be granted relief as follows:

**(1)**   INJUNCTIVE RELIEF, including:

    **(a)**   temporary restraining order and Preliminary Injunction against the Defendants and the Defendants' accounts.

    **(b)**   Such further relief under TEX. BUS. & COM. CODE § 24.008 to which Plaintiff may be entitled, including, but not limited to:

        **(i)**   avoidance of the sale, transfer, or assignment of the franchise of OTA Dallas;

        **(ii)**   an attachment against any assets transferred in violation of TEX. BUS. & COM. CODE § 24.001; and

        **(iii)**   an injunction restraining further disposition by the Defendants of assets or property.

**(2)**   DAMAGES, whether actual, consequential, special, punitive, and exemplary.

**(3)**   FURTHER EQUITABLE RELIEF to which Plaintiff may be entitled, including, but not limited to:

    **(a)**   **Rescission** of the Notes, **Restitution** of the Investment sums and **Disgorgement** of any profits;

    **(b)**   **Reformation** of the Notes to perfect Plaintiff's security interest over the collateral;

    **(c)**   **An Accounting of Profits** regarding the sums defrauded from Plaintiff;

    **(d)**   **A Constructive Trust** over the assets of Defendants, including any accounts receivable held by Defendants; and

    **(e)**   **Equitable damages.**

**(4)**   DECLARATORY RELIEF, specifically a declaration that the Plaintiff is entitled to security over all Accounts Receivable currently held by Defendant Essential Financial in respect of its portfolio of student loans or such other collateral as may be determined;

(5)     **Foreclosure of the Plaintiff's Security Interest** in the collateral to be determined to be held by Essential Financial or Tuition Funding, or any other person or entity to which the Plaintiff's interest may attach;

(6)     **Reasonable and necessary** attorney's fees and court costs.

(7)     **interest** at the highest lawful rate from the date of the Note to the date of judgment, and post judgment interest from the date of judgment until the judgment is paid.

(8)     **Such further or other relief** to which to which Plaintiff may be entitled including, but not limited to attachment, sequestration, or garnishment.

Dated: July 2, 2018.

Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C.**

*/s/ M.E. Furse*

MATTHEW E. FURSE
Texas State Bar No. 24105032
MFurse@GPM-Law.com

DAVID W. DODGE
Texas State Bar No. 24002000
DDodge@GPM-Law.com

14801 Quorum Dr., Ste. 500
Dallas, Texas 75254
Tel. (972) 419-8300
Fax. (972) 419-8329

**ATTORNEYS FOR PLAINTIFF**